**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **WILLIAM WATSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:22-cv-414 (MTT)** |
| ) | |
| **SPM, LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**ORDER**

Defendants SPM, LLC and Smith Heights Apartments have moved to dismiss
plaintiff William Watson's Title VII of the Civil Rights Act of 1964, Privacy Act,
constitutional privacy, declaratory judgment, defamation, and intentional infliction of
emotional distress ("IIED") claims.  Docs. 8; 17.  For the following reasons, the
defendants' motion (Docs. 8; 17) is **GRANTED**.

**I. BACKGROUND**[1]

In 2000, Watson began working as a maintenance technician at Smith Heights, a
complex owned by SPM and under contract with the United States Department of
Housing and Urban Development ("HUD").  Docs. 1-1 ¶ 1; 16 ¶¶ 14, 23-24, 40.  Bernita
Jenkins became Watson's supervisor in 2021 and "began making comments to [him]
about his age."  Doc. 1-1 ¶¶ 3, 8.  She "asked [him] repeatedly 'why was he [sic] still
working at his age.'"  *Id*. ¶ 9.  She "told [him] that if she could 'draw her social security

---

[1] Because Watson specifically incorporates his original complaint into his amendment to his complaint,
these facts are drawn from both documents.  Docs. 1-1; 16; *Varnes v. Loc. 91, Glass Bottle Blowers
Ass'n of U.S. and Can.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended
complaint supersedes and replaces the original complaint *unless the amendment specifically refers to or
adopts the earlier pleading*.") (emphasis added).

check like [him], she would surely quit work and go traveling.'"  *Id*. ¶ 10.  And she "stated numerous times that 'anyone 70 years of age or older should not be working.'" *Id*. ¶ 25.

Jenkins then began to "wrongfully create an erroneous record of [Watson] alleging misconduct" to "have a reason to put [him] on wrongful probation and eventual termination."  *Id*. ¶¶ 14-15, 20.  For example, she alleged he was "not getting vacant apartments ready or quickly enough, leaving the property without her consent, and not turning in completed work orders."  *Id*. ¶ 14.  She also "falsified documents regarding … his work performance" and "willfully failed to input" Watson's timely and properly submitted work orders.  *Id*. ¶¶ 16, 21-22.  Indeed, Watson states that he "worked appropriately and well"—he was "a hard-worker," "had an exemplary work performance history," and never left work "for any purpose other than to get supplies."  *Id*. ¶¶ 24, 29, 35.  Thus, when Watson spoke to Moses Wright, SPM's human resources director, about Jenkins' conduct, "Wright could find no evidence of any wrongdoing or misconduct" by Watson.  *Id*. ¶ 18.

Watson subsequently informed human resources that "he was being harassed, intimidated, and written up on the basis of his age and not for any real bona fide work issue."  *Id*. ¶ 28.  Human resources then "attempted to offer [him] a cash payout of $3,000.00 if [he] would voluntarily quit."  *Id*. ¶ 29.  On June 3, 2021, Wright went to Smith Heights and told Watson he 'did not want to fire [Watson] because [he] was a good employee and did a good job.'"  *Id*. ¶ 31.  However, Wright "'already had paperwork printed to get [Watson] to sign saying [he] resigned.'"  *Id*.  "On or about June 4, 2021," Wright "again offered [Watson] $3,000.00 if '[he] would just resign and take the

money.'"  *Id*. ¶ 33.  SPM then fired Watson.  *Id*. ¶ 36.  Watson was seventy years old at the time of his termination.  *Id*. ¶ 32.  After his termination, SPM allegedly provided Watson's "separation paper with his social security number and private information" to a Perry police department employee and Smith Heights residents.  *Id*. ¶¶ 60-61; Doc. 16 ¶ 29.

On November 21, 2022, after filing his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"),[2] Watson, *pro se*, filed this action against SPM alleging Title VII, Age Discrimination in Employment Act ("ADEA"), and Privacy Act claims.  Doc. 1.  The Court granted Watson's motion to amend his complaint that was filed in response to SPM's first motion to dismiss and ordered him to file a proposed amended complaint.  Docs. 13; 15.  On June 23, 2023, Watson filed an amendment to his original complaint, adding Smith Heights as a defendant and alleging, in addition to his previous claims, constitutional privacy, declaratory judgment, defamation, and IIED claims.  Doc. 16.  The defendants move to dismiss all but Watson's ADEA claim.[3]  Docs. 8; 17.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

---

[2] Because the defendants do not raise an exhaustion defense, the Court will assume for purposes of this order that Watson properly exhausted his remedies with the EEOC.

[3] The Court notes that when Watson moved to amend, the Court ordered him to submit a proposed amended complaint and ordered SPM to file a reply brief to "address whether Watson's motion to amend should be allowed or denied as futile."  Doc. 15.  Instead of a *proposed* amended complaint, Watson filed an amendment to his original complaint.  Doc. 16.  Instead of a reply, the defendants filed a motion to dismiss which incorporated SPM's first motion to dismiss.  Docs. 8; 17.  After Watson responded, the defendants failed to file a reply brief.  Even though the parties failed to follow the Court's orders, it will proceed to address the defendants' motion.

P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018). Moreover, "'[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Stephens v. DeGiovanni*, 852 F.3d 1298, 1318 n.16 (11th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### III. DISCUSSION

The defendants argue Watson's pleadings, even if construed liberally, fail to state Title VII, Privacy Act, constitutional privacy, declaratory judgment, defamation, or IIED claims and are due to be dismissed.  Docs. 8 at 3-6; 17 at 3-8.  The Court agrees.

### A. Title VII

Watson alleges the defendants violated Title VII when they allegedly fired him based on his age.  Docs. 1-1 ¶ 38; 16 ¶ 3.  However, as the defendants point out, Title VII does not prohibit discrimination based on age.  Docs. 8 at 3-4; 17 at 3; 42 U.S.C. § 2000e-2(a) (prohibiting discrimination based on race, color, religion, sex, and national origin).  Although Watson alleges in his amendment to his complaint that he was fired "for reverse discrimination based upon [his] race," he provides no other allegations regarding race discrimination and included no allegation of such a claim in his EEOC charge.  Doc. 8-1.  Accordingly, Watson's Title VII claim is **DISMISSED**.[4]

### B. Privacy Act

Next, Watson alleges the defendants violated the Privacy Act when they provided his social security number and "separation papers" to the Perry police department and Smith Heights residents.  Docs. 1-1 ¶¶ 60-61; 16 ¶ 29.  However, the Privacy Act only prohibits record disclosures by federal government agencies.  5 U.S.C. § 551(1); 5 U.S.C. § 552a(b).  Watson argues the defendants' alleged conduct is subject to the

---

[4] Watson states in his response brief that he "believes" he was also discriminated against based on his sex and disability.  Doc. 13 at 2, 6.  But nowhere in his original complaint, his amendment to his complaint, or his EEOC charge does he allege discrimination based on sex and/or disability.  *See, e.g.*, Docs. 1-1 ¶ 38 ("Defendant harassed, targeted, and eventually fired Plaintiff on account of his age."), ¶ 41 ("Plaintiff was only targeted because of his age."), ¶ 50 ("Age is the reason Plaintiff … was fired."); 1-2 (stating age discrimination as the cause of action on his civil cover sheet); 8-1 at 2 ("I believe that I have been discriminated because of my age."); 16 ¶ 12 ("I was terminated based upon my age."), ¶ 9 ("I was fired for my age and also for reverse discrimination based upon my race-I am white.").

Privacy Act "[b]ecause Smith Heights has a contract with HUD."  Docs. 13 at 5-6; 16 ¶¶ 19, 23-25, 29; 20 at 2.  Like the defendants, the Court can find no support for the proposition that the "alleged status as a HUD-regulated apartment complex … convert[s] Defendants into agencies of the United States."  Doc. 17 at 4.  Accordingly, Watson's Privacy Act claim is **DISMISSED**.

## C. Constitutional Privacy

Watson further alleges the defendants violated his constitutional right to privacy based on their alleged disclosure of his personal information.  Doc. 16 ¶¶ 18, 26-28.  However, the United States Constitution only protects individuals against *government* intrusions.  To the extent Watson's claim is based on a belief that the defendants are part of HUD, a federal agency, that claim is barred.  *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) (holding that the federal government and its agencies are immune from suits for constitutional violations).  In any event, Watson has not sufficiently alleged that either defendant is a federal government entity.  Accordingly, Watson's constitutional privacy claim is **DISMISSED**.

## D.  Declaratory Judgment

Watson amended his complaint "to add a declaratory judgment [sic] under 28 U.S.C. § 2201 and 2202 Section 3 and 4 since HUD is in contract with Smith Heights Apartment Complex and that contract applies to [him] as an employee."  Doc. 16 ¶ 14.  However, the Declaratory Judgment Act does not provide an independent cause of action.  Rather, it allows the Court to "declare the rights and other legal relations of any interested party seeking such a declaration."  28 U.S.C. § 2201.  It is entirely unclear what declaration of rights Watson seeks.  Moreover, "federal question jurisdiction exists

in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law." *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1251 (11th Cir. 2003). It is also unclear what coercive action the defendants could, or would, bring against Watson regarding his employment. Therefore, Watson's claim for relief under the Declaratory Judgment Act is **DISMISSED**.

### E. Defamation

To state a claim for defamation under Georgia law, a plaintiff must allege four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm*." Am. Civ. Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650, 864 S.E.2d 422, 427-28 (2021) (citation omitted). Where, as here, the plaintiff is a private figure, he must allege "that the defendant published the allegedly defamatory statements with at least ordinary negligence." *Id*.

Watson added a defamation claim based, again, on the "broadcast" of his personal information to the Perry police department and Smith Heights residents. Doc. 16 ¶¶ 29-32. However, a defamation claim based on the disclosure of that personal information fails. As the defendants correctly point out, that information—his social security number and "separation papers"—is not false.[5] Doc. 17 at 6. To the extent Watson bases his defamation claim on false information contained in his "separation

---

[5] The defendants also argue Watson's defamation claim is barred by Georgia's one-year statute of limitations because the alleged defamatory conduct took place in June 2021 and he filed his complaint on November 21, 2022. Doc. 17 at 6. However, from the face of his complaint and amendment, it is unclear whether the alleged disclosure of his personal information happened in June 2021, or some later date.

papers," he has not alleged any information tending to suggest that fact. Accordingly, his defamation claim is **DISMISSED**.

**F. Intentional Infliction of Emotional Distress**

To state an IIED claim, a plaintiff must allege that "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 179, 733 S.E.2d 457, 465 (2012) (quoting *Frank v. Fleet Finance Inc. of Ga.*, 238 Ga. App. 316, 317–318, 518 S.E.2d 717 (1999)); *see also Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453, 651 S.E.2d 790, 792 (2007). And the alleged conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Racette*, 318 Ga. App at 179, 733 S.E.2d at 465.

Construing Watson's *pro se* pleadings liberally, it appears he alleges an IIED claim based upon the disclosure of his personal information. Doc. 16 ¶¶ 33-35. Watson states he "did not give permission for [his] information to be given to third parties," "[a]s a result, [he] ha[s] suffered damage," and he "amend[s] [his] complaint for intentional infliction of emotional distress." *Id*. These allegations alone are not sufficient to state a claim for IIED—Watson provides no information stating how or why his personal information was disclosed to suggest whether the disclosure was intentional or reckless and extreme and outrageous. Moreover, he provides no allegation that he suffered severe emotional distress. The absence of these allegations makes it nearly impossible for the defendants to respond to the claim. Therefore, his IIED claim is **DISMISSED**.

**IV. CONCLUSION**

Because Watson has failed to state a Title VII, constitutional privacy, declaratory judgment, defamation, or intentional infliction of emotional distress claim, SPM and Smith Heights' motion to dismiss (Docs. 8; 17) is **GRANTED**.  Accordingly, those claims are **DISMISSED** without prejudice[6] and Watson may proceed with his ADEA claim.

**SO ORDERED**, this 6th day of October, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] The defendants requested Watson's claims be dismissed with prejudice.  Docs. 8 at 6; 17 at 8. Although some of Watson's claims will arguably fail no matter how he pleads them, the Court finds no adequate reason to dismiss his claims with prejudice.